IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TODD ALAN BROWN, | No. 4:22-CV-01154 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| WARDEN GLOVER, *et al.*, | |
| Defendants. | |

# MEMORANDUM OPINION

### MAY 31, 2024

Plaintiff Todd Alan Brown is currently incarcerated in SCI Huntingdon. Before his transfer into the state prison system, he was briefly held in pretrial detention at Huntingdon County Prison in Huntingdon, Pennsylvania. Brown filed the instant *pro se* Section 1983[1] action concerning the medical care he received at Huntingdon County Prison. Brown's claims have been winnowed to a single claim of deliberate indifference to serious medical needs against one prison medical provider. That Defendant now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the following reasons, the Court will grant Defendant's Rule 56 motion.

---

[1] 42 U.S.C. § 1983. Section 1983 creates a private cause of action to redress constitutional wrongs committed by state officials. The statute is not a source of substantive rights; it serves as a mechanism for vindicating rights otherwise protected by federal law. *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002).

I.      **FACTUAL BACKGROUND**[2]

During all times relevant to the claims underlying this lawsuit, Brown was a pretrial detainee at Huntingdon County Prison (HCP).[3] In his complaint and amended complaint, he alleged that from December 21, 2021, to February 3, 2022, he received constitutionally deficient medical care by several prison officials and medical providers at HCP.[4]

The Court screened both pleadings as required by 28 U.S.C. § 1915A.[5] Following screening of the amended complaint, the Court permitted Brown's Section 1983 medical indifference claims to proceed against nurse Susan Watkins and a physician later identified as Dr. Mark Minor.[6] After waiving service, both Watkins and Dr. Minor moved for dismissal pursuant to Federal Rule of Civil

---

[2] Local Rule of Court 56.1 requires that a motion for summary judgment be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." LOCAL RULE OF COURT 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. *Id.* "Statements of material facts in support of, or in opposition to, a motion [for summary judgment] shall include references to the parts of the record that support the statements." *Id.* Defendant Susan Watkins filed a properly supported statement of material facts. *See* Doc. 49. Brown eventually responded to this statement. *See* Doc. 58. Brown's responses, however, are not supported by citations to the record and instead contain nothing more than argument or allegations. This directly contravenes Local Rule 56.1. *See Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018) (explaining that Local Rule 56.1 "is essential to the Court's resolution of a summary judgment motion due to its role in organizing the evidence, identifying undisputed facts, *and demonstrating precisely how each side proposed to prove a disputed fact with admissible evidence*." (emphasis added) (internal quotation marks and citations omitted)). Defendant's material facts, therefore, are deemed admitted unless plainly contradicted by the record. *See* LOCAL RULE OF COURT 56.1.
[3] Doc. 49 ¶¶ 1-2.
[4] *See* Doc. 1 at 4-5; Doc. 11 at 1.
[5] *See generally* Docs. 9, 10, 16, 17.
[6] *See* Doc. 16 at 6-9.

Procedure 12(b)(6).[7]  The Court granted Dr. Minor's Rule 12(b)(6) motion but denied Watkins' motion.[8]  As the Court observed, Watkins' motion to dismiss improperly relied on materials outside the pleadings that the Court could not consider at the Rule 12(b)(6) stage.[9]

Following discovery, Watkins moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.[10]  That motion is fully briefed.  The Rule 56 record facts are as follows.

Brown was transferred from Geisinger Lewistown Hospital to HCP on December 21, 2021.[11]  At the emergency department, Brown had been diagnosed with a right auricular region hematoma, a facial contusion, and opioid intoxication.[12]  The following day at HCP, he was seen separately by both Watkins and Dr. Minor.[13]  Pursuant to the hospital discharge instructions, Watkins scheduled Brown for a follow-up appointment with an ENT specialist, Dr. Modzeski, on December 31, 2021, at 9:30 a.m.[14]  Dr. Minor, as part of his initial assessment on December 22, determined, among other things, that (1) Brown did not need to be seen within three days as recommended on the hospital discharge

---

[7]  *See generally* Docs. 21, 34.
[8]  *See generally* Docs. 36, 37.
[9]  *See* Doc. 36 at 7-8.
[10]  Doc. 47.
[11]  *See* Doc. 38 at 1; Doc. 38-3 at 3, 6; Doc. 50-1 at 2.
[12]  *See* Doc. 50-1 at 2.
[13]  *See* Doc. 38-2 at 1-2.
[14]  *Id.* at 1.

instructions, (2) Brown should keep the ENT appointment that was scheduled for December 31, and (3) Brown should be placed on an antibiotic, which he prescribed.[15]

The day before the December 31 ENT appointment, Dr. Modzeski's office canceled the appointment "due to the provider being out sick."[16] Dr. Modzeski's office rescheduled the appointment for January 17, 2022.[17] That same day—December 30—Watkins applied clean gauze to Brown's right ear.[18] Then, on January 14, 2022, Dr. Modzeski's office again canceled the January 17 ENT appointment due to "upcoming inclement weather."[19] It was rescheduled for the following day, January 18, 2022.[20] Brown saw the ENT on January 18, 2022, as scheduled.[21]

On January 17, 2022, the day before his follow-up appointment with the ENT, Brown filed a grievance at HCP.[22] In that grievance, he complained about his head hurting, that he had suffered a concussion from his altercation with police, and the fact that he had not seen the ENT for a follow-up appointment within "three days" as ordered by a Geisinger Lewistown Hospital doctor.[23] Brown's

---

[15] *See id.* at 2; Doc. 38-3 at 6; Doc. 49 ¶ 11.
[16] Doc. 49 ¶ 3.
[17] *Id.*
[18] *Id.* ¶ 4.
[19] *Id.* ¶ 5.
[20] *Id.* ¶ 6.
[21] *Id.* ¶ 7.
[22] Doc. 49 ¶ 8; Doc. 38-3 at 5.
[23] *See* Doc. 38-3 at 5.

grievance was reviewed and denied.[24] Brown appealed, but his appeal was likewise denied following a meeting with a three-person Grievance Committee.[25] In July 2022, Brown filed the instant lawsuit.[26]

## II. STANDARD OF REVIEW

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses."[27] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] Material facts are those "that could alter the outcome" of the litigation, and "disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[29]

At the Rule 56 stage, the Court's function is not to "weigh the evidence and determine the truth of the matter" but rather "to determine whether there is a genuine issue for trial."[30] The Court must view the facts and evidence presented "in the light most favorable to the non-moving party" and must "draw all reasonable inferences in that party's favor."[31] This evidence, however, must be

---

[24] Doc. 49 ¶ 9; Doc. 38-3 at 6.
[25] *See* Doc. 49 ¶¶ 10-11; Doc. 38-3 at 3-4, 7.
[26] *See generally* Doc. 1.
[27] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).
[28] FED. R. CIV. P. 56(a).
[29] *EBC, Inc. v. Clark Bldg. Sys., Inc.*, 618 F.3d 253, 262 (3d Cir. 2010) (quoting *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993)).
[30] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
[31] *Thomas v. Cumberland County*, 749 F.3d 217, 222 (3d Cir. 2014).

adequate—as a matter of law—to sustain a judgment in favor of the nonmoving party on the claim or claims at issue.[32] A "scintilla of evidence" supporting the nonmovant's position is insufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]."[33] Succinctly stated, summary judgment is "put up or shut up time" for the nonmoving party.[34]

## III. DISCUSSION

Brown's only viable Section 1983 claim asserts that Watkins was deliberately indifferent to his serious medical needs. After careful consideration, the Court finds that Brown has failed to adduce any evidence of deliberate indifference by Watkins, so summary judgment must be granted in her favor.

### A. Fourteenth Amendment Medical Indifference

As noted above, Brown was a pretrial detainee during his time at HCP. Thus, his claims implicate the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment's cruel-and-unusual-punishments provision. However, it does not appear that the United States Court of Appeals for the Third Circuit has established or adhered to a different standard with respect to Fourteenth Amendment pretrial detainee medical care claims versus those raised by

---

[32] *Liberty Lobby*, 477 U.S. at 250-57; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-89 (1986).
[33] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Liberty Lobby*, 477 U.S. at 252) (alteration in original).
[34] *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 391 (3d Cir. 2017) (quoting *Berkeley Inv. Grp. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006)).

incarcerated individuals under the Eighth Amendment.[35] Accordingly, the Court will apply existing Eighth Amendment jurisprudence to Brown's Fourteenth Amendment medical indifference claims.

In the context of prison medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[36] To establish an Eighth Amendment deliberate indifference claim regarding inadequate medical care, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need."[37] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[38]

---

[35] This remains so even following the Supreme Court of the United States' decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), which established a different standard for pretrial detainee excessive force claims. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 & n.23 (3d Cir. 2023) (applying Eighth Amendment standard to pretrial detainee's medical care claim); *see also Moore v. Luffey*, 757 F. App'x 335, 340 & n.2 (3d Cir. 2019) (nonprecedential) (rejecting plaintiff's argument to apply *Kingsley*'s holding to Fourteenth Amendment medical care claim and instead analyzing under Eighth Amendment jurisprudence); *see also Parker v. Butler County*, 832 F. App'x 777, 780 & n.1 (3d Cir. 2020) (nonprecedential) (applying Eighth Amendment standard to pretrial detainee medical care claim while acknowledging Fourteenth Amendment is source of right); *Miller v. Steele-Smith*, 713 F. App'x 74, 76 n.1, 78 (3d Cir. 2017) (nonprecedential) (same); *Goode v. Giorla*, 643 F. App'x 127, 129 & n.3 (3d Cir. 2016) (nonprecedential) (same); *Edwards v. Northampton County*, 663 F. App'x 132, 136-37 (3d Cir. 2016) (nonprecedential) (citing *Natale v. Camden Cnty Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003)).

[36] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

[37] *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

[38] *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

Deliberate indifference by prison officials may be evidenced by intentional refusal to provide care known to be medically necessary, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, or denial of reasonable requests for treatment resulting in suffering or risk of injury.[39] Deliberate indifference to serious medical needs is an exacting standard, requiring a showing of "unnecessary and wanton infliction of pain."[40] Claims sounding in mere medical negligence will not suffice.[41]

Brown's primary medical indifference complaint is that he did not see the ENT for a follow-up appointment soon enough. However, as the record plainly reflects, Watkins immediately scheduled the ENT appointment as part of her initial encounter with Brown on December 22, the day after he was transferred to HCP. Obtaining a specialist appointment just *nine days* after an initial encounter is medical care that even patients who are not incarcerated would likely envy.[42] Moreover, any delay in treatment was caused by the specialist's office canceling and rescheduling Brown's appointment due to legitimate reasons (including the physician's illness and inclement weather). In no way can the delay be attributed to Watkins.

---

[39] *See Durmer v. O'Carroll*, 991 F.2d 64, 68 & n.11 (3d Cir. 1993) (quoting *Lanzaro*, 834 F.2d at 346).
[40] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).
[41] *Rouse*, 182 F.3d at 197.
[42] *See Parker v. Mulderig*, No. 92-CV-2645, 1993 WL 44275, at *6 (E.D. Pa. Feb. 17, 1993) ("The ability to obtain immediate medical care on demand is a luxury enjoyed by few outside prison walls. Prisoners can expect no more.").

Brown's arguments to the contrary are wholly unpersuasive. He maintains that Watkins should have contacted another specialist because "there are other doctors in the area."[43] This type of bald assertion, which lacks any citation to the record or legal authority, does not even implicate negligence, let alone a constitutional violation. He additionally argues—without any evidence—that Watkins "could have and should have had [him] temporarily transferred to another facility[] in another area."[44] Again, Brown provides no support for his implausible assertions that a nurse would have control over inmate transfers or that a facility transfer would be appropriate for a mere follow-up ENT appointment.

Additionally, Brown contends that his hospital orders required him to see an ENT three days after his discharge. However, the Rule 56 record shows that Dr. Minor's assessment was that a follow-up appointment nine days later was sufficient. First, and most importantly, this medical determination did not involve Watkins. Second, at most it would implicate a mere disagreement as to a medical provider's professional judgment or treatment plan, which does not rise to the level of a constitutional violation.[45]

---

[43] Doc. 50 at 2.
[44] *Id.*
[45] *See Lanzaro*, 834 F.2d at 346 (explaining that "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation"); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) ("Because 'mere disagreement as to the proper medical treatment' does not 'support a claim of an eighth amendment violation,' when medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." (internal citation omitted)); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[I]t is well established that as long as a

Another facet of Brown's medical indifference claim involves his left pinky finger. He alleges that it was injured during an altercation with police at the time of his arrest. On December 22, Dr. Minor ordered an X-ray for the finger because it looked abnormal.[46] It does not appear that this X-ray was completed until January 24, 2022, two days after Brown saw Dr. Minor for a follow-up appointment after the ENT consultation and Dr. Minor re-ordered the X-ray.[47] The following day—January 25, 2022—Brown was scheduled for an orthopedic consult for January 27, 2022.[48] Brown then had surgery on his finger on January 31, 2022.[49]

Once again, Brown has not proffered any evidence that Watkins was deliberately indifferent to his medical needs. There is no evidence that Brown continued to complain about his finger (or the X-ray) to Watkins and was denied care,[50] that Watkins *intentionally* failed to provide care known to be medically necessary, or that Watkins delayed care for nonmedical reasons. The Court specifically observes that Brown, in his prison grievance and its appeal, did not

---

physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.").
[46] *See* Doc. 38-2 at 2.
[47] *See id.* at 4.
[48] *See id.*
[49] Doc. 49 ¶ 16.
[50] Brown provides a witness statement from inmate Keith Larson indicating that Larson "heard [Brown] tell the officers" that "[h]is finger was hurting or in pain." Doc. 50-5 at 3. This statement does not indicate when Brown made such complaints to corrections officers, nor does it show that Watkins was informed of these complaints.

mention anything about his finger or the X-ray that Dr. Minor had ordered on December 22.[51] Thus, at most, the inadvertent failure by Watkins to obtain an X-ray after it was first ordered by Dr. Minor implicates medical malpractice or professional negligence, which is insufficient to establish a constitutional infringement.[52]

Finally, Brown avers that at some point during his detainment at HCP, he lost consciousness "on the main cell block" but was not immediately seen by medical.[53] He contends that several inmates saw him pass out and informed nearby corrections officers, who in turn directed other officers to "call the nurse at home."[54] The officers also took Brown's vitals at the time of the incident and found that his blood pressure was elevated.[55] Brown avers that the nurse (presumably Watkins) "never came to the jail" that night, instead arriving and meeting with him the following morning.[56] Brown does not allege that he experienced any harm or injury from this syncope incident.

Once again, these circumstances do not evince deliberate indifference to serious medical needs. Brown's contention that he should have been provided immediate on-call care, without showing that he had a "serious medical need" that

---

[51] *See generally* Doc. 38-3.
[52] *Rouse*, 182 F.3d at 197.
[53] Doc. 11 at 4; Doc. 50-6 at 3.
[54] Doc. 50-6 at 3.
[55] *See id.*
[56] *See id.*

11

was an imminent threat to life or health and required urgent medical attention, is insufficient to establish that Watkins violated his constitutional rights. Indeed, Brown admits that prison officials promptly came to his cell, took his vitals, and contacted the on-call nurse, who determined that treatment the following morning would be sufficient. A brief delay in treatment for a medical issue that is not an immediate threat to life or health (unlike, for instance, a stroke or heart attack) simply does not amount to constitutionally deficient medical care.[57]

In sum, Brown has failed to proffer evidence that Watkins was deliberately indifferent to his serious medical needs. At best, Brown has pointed to circumstantial evidence that may implicate medical negligence. But that is a much different standard than deliberate indifference, and Brown never asserted a state-law medical malpractice claim against Watkins in his amended complaint.[58] Thus, summary judgment must be granted in Watkins' favor on this claim.

---

[57] *See Spruill v. Gillis*, 372 F.3d 218, 236-37 (3d Cir. 2004) (finding that inmate's one-day delay between signing up for sick call and being seen by a nurse, despite claiming he was in "excruciating pain," did not amount to deliberate indifference); *Parker v. Mulderig*, No. 92-CV-2645, 1993 WL 44275, at *6 (E.D. Pa. Feb. 17, 1993) ("[Plaintiff] avers he suffered pain in the four or five hours between the time he first sought care from [a guard] and the time he obtained medical attention [ ]. This delay, however, is constitutionally negligible. The ability to obtain immediate medical care on demand is a luxury enjoyed by few outside prison walls. Prisoners can expect no more. While delay in access to medical care can amount to cruel and unusual punishment, a few hours['] wait for medical care for an illness or condition that does not constitute an immediate threat to life or health is not evidence of a deliberate indifference to serious medical needs." (alterations in original) (quoting *Felders v. Miller*, 776 F. Supp. 424, 427 (N.D. Ind. 1991))).

[58] Even if Brown had asserted a medical malpractice claim against Watkins, the Court would decline to exercise supplemental jurisdiction over it because his constitutional claims are being dismissed. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (explaining general rule that if all federal claims are dismissed before trial, courts

## B. First Amendment Retaliation

In his amended complaint, Brown included allegations that possibly implied a claim of retaliation.[59] Those allegations, however, targeted a different defendant (Warden Glover) who was previously dismissed from this litigation.[60] Watkins contends that any retaliation claim directed at her fails at the Rule 56 stage. The Court finds that, if Brown intended to assert a First Amendment retaliation claim in his amended complaint, he has failed to do so. Thus, any retaliation claim against Warden Glover or Watkins must be dismissed.

Although a prisoner's constitutional rights are necessarily circumscribed, an inmate still retains First Amendment protections when they are "not inconsistent" with prisoner status or with the "legitimate penological objectives of the corrections system."[61] To state a First Amendment retaliation claim, a plaintiff must plausibly plead that (1) "he was engaged in constitutionally protected conduct," (2) he suffered an "adverse action" by prison officials sufficient to deter a person of ordinary firmness from exercising his First Amendment rights, and

---

should likewise dismiss pendent state-law claims); *Shaffer v. Bd. of Sch. Dirs. Albert Gallatin Area Sch. Dist.*, 730 F.2d 910, 912 (3d Cir. 1984) (explaining that, absent "extraordinary circumstances," supplemental jurisdiction over state-law claims should be declined "where the federal claims are no longer viable" (citation omitted)).

[59] *See* Doc. 11 at 6-7.
[60] *See id.*; *see also* Doc. 16 at 5-6.
[61] *Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017) (quoting *Newman v. Beard*, 617 F.3d 775, 781 (3d Cir. 2010)).

(3) the plaintiff's protected conduct was a "substantial or motivating factor" in the prison officials' decision to take the adverse action.[62]

Brown cannot state a claim for retaliation because he has not identified an adverse action. Brown alleges that he was transferred from HCP to SCI Smithfield (also located in Huntingdon, Pennsylvania, approximately two miles from HCP) in retaliation for filing a grievance about his medical care. But a mere transfer to a nearby prison, without more, would not deter a person of ordinary firmness from exercising their First Amendment rights.[63] Thus, Brown's single allegation of being moved to an adjacent prison within the same town does not establish an adverse action for First Amendment retaliation, regardless of whom he targets in this claim.

Consequently, to the extent Brown raises a retaliation claim in his amended complaint, that claim must be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. Dismissal will be

---

[62] *Id.* (quoting *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001)); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (quoting *Rauser*, 241 F.3d at 333).

[63] *See Collazo v. Rozum*, 646 F. App'x 274, 276 (3d Cir. 2016) (nonprecedential) (explaining that inmate had failed to allege "how the prison transfer was an adverse action"); *cf. Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001) (noting that transfer to a distant prison where family could not visit could implicate adverse action); *Siggers-El v. Barlow*, 412 F.3d 693, 702, 704 (6th Cir. 2005) (finding that prison transfer which caused loss of prison job and limited access to plaintiff's attorney could amount to an adverse action); *Williams v. Wetzel*, No. 1:17-CV-79, 2020 WL 583983, at *8 (M.D. Pa. Feb. 6, 2020) (finding that prison transfer was adverse action where it "punitively detach[ed] Plaintiff from his loved ones and/or visitation" and affected his parole recommendation).

with prejudice, as Brown has repeatedly failed to cure deficiencies with his pleadings even after "amendments previously allowed."[64]

## IV. CONCLUSION

Based on the foregoing, the Court will grant Watkins' motion for summary judgment as to Brown's claim of Fourteenth Amendment deliberate indifference to serious medical needs.  To the extent that Brown asserts a First Amendment retaliation claim, that claim will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).  An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[64] *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jones v. Unknown D.O.C. Bus Driver & Transp. Crew*, 944 F.3d 478, 483 (3d Cir. 2019) (concluding that, where inmate plaintiff "has already had two chances to tell his story," providing "further leave to amend would be futile").